WILLIAM PRYOR, Circuit Judge,
dissenting:
Medicare is governed by a notoriously complex statute, but a brief summary of the four provisions relevant to this appeal reveals why Humana failed to state a claim. Section 1395y(b)(3)(A) creates “a private cause of action ... in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).” 42 U.S.C. § 1395y(b)(3)(A) (emphasis added). Paragraph (2)(A) prohibits “[p]ayment under this subchapter ... except as provided in subparagraph (B).” Id. § 1395y(b)(2)(A). Subparagraph (B) empowers the Secretary of Health and Human Services to make payments conditioned on reimbursement of the Medicare Trust Funds, but it says nothing about Medicare Advantage Organizations. See id. § 1395y(b)(2)(B). Medicare Advantage Organizations instead charge primary plans in accordance with section 1395w-22(a)(4). Because Humana is not the Secretary and its coffers are not the Trust Funds, it cannot seek payment or reimbursement “in accordance with paragraphs (1) and (2)(A).” For that reason, section 1395y(b)(3)(A) creates no private cause of action for a Medicare Advantage Organization. I respectfully dissent.
The scope of section 1395y(b)(3)(A) is limited by its references to paragraphs (1) *1241 and (2)(A). Paragraph (1) generally prohibits group health plans and large group health plans from denying benefits on the ground that an individual is eligible for Medicare Part A. See id. § 1395y(b)(l). Paragraph (2)(A) forbids the Secretary from making payments when an insurance policy has paid, or can reasonably be expected to pay, with one exception:
Payment under this subchapter may not be made, except as provided in subpara-graph (B), with respect to any item or service to the extent that—
(ii) payment has been made or can reasonably be expected to be made ... under a ... liability insurance policy or plan (including a self-insured plan).... In this subsection, the term “primary plan” means a ... liability insurance policy or plan (including a self-insured plan) ... to the extent that clause (ii) applies.
Id. § 1395y(b)(2)(A) (emphasis added). The one exception — “except as provided in sub-paragraph (B)” — applies to a payment by the Secretary conditioned on reimbursement of the Trust Funds:
(i) Authority to make conditional payment
The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.
(ii) Repayment required
Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is deihonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.
Id. § 1395y(b)(2)(B)(i)-(ii). Subparagraph (B) also gives the Secretary a cause of action to recover reimbursement against primary plans, id. § 1395y(b)(2)(B)(iii), and subrogates the United States to any right to payment under a primary plan, id. § 1395y(b)(2)(B)(iv).
A Medicare Advantage Organization receives no authority from paragraphs (1) and (2)(A). Paragraph (1) addresses the case of a group health plan or a large group health plan that denies benefits because an individual is eligible for Medicare Part A. Paragraph (2)(A) refers to subpar-agraph (B), which repeatedly and exclusively refers to the Secretary and the Trust Funds: “[t]he Secretary may make payment,” “[a]ny such payment by the Secretary shall be conditioned on reimbursement- -to the appropriate Trust Fund,” “an entity that redeives payment from a primary plan[ ] shall reimburse the appropriate Trust Fund for any payment made by the Secretary,” and “[i]f reimbursement is not made to the appropriate Trust Fund ... the Secretary may charge interest.” Id. § 1395y(b)(2)(B). A Medicare Advantage Organization is not the Secretary, and it does not make payments out of the Trust Funds. As a result, it cannot seek payment or reimbursement in accordance with paragraph (2)(A).
A separate provision, section 1395w-22(a)(4), gives Medicare Advantage Organizations the power to charge an insurer “under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2)”:
*1242 Notwithstanding any other provision of law, a [Medicare Advantage] organization may (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section— (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services....
Id. § 1395w-22(a)(4). Section 1395w-22(a)(4) mentions section 1395y(b)(2), but the cross-reference “simply explains when MAO coverage is secondary to a primary plan ... — that is, under the same circumstances when insurance through traditional Medicare would be secondary.” Parra v. PacifiCare of Ariz., Inc., 715 F.3d 1146, 1154 (9th Cir. 2013). It does not subject Medicare Advantage Organizations to all of the parts of section 1395y(b)(2). Instead, it establishes a different regulatory regime — one that does not require Medicare Advantage Organizations to be secondary payers, impose time limits on reimbursement, require demonstrated responsibility, establish an extensive administrative process, give the Secretary a cause of action, or subrogate the United States to any right to payment by a primary plan. A Medicare Advantage Organization charges primary plans in accordance with section 1395w-22(a)(4), not section 1395y(b)(2)(A).
The majority agrees with the Third Circuit in In re Avandia Marketing, Sales Practices & Products Liability Litigation, 685 F.3d 353 (3d Cir. 2012), that section 1395y(b)(3)(A) is “a broadly worded provision,” Majority Op. at 1238, but the majority and the Third Circuit fail to take into account the phrase “in accordance with paragraphs (1) and (2)(A).” Nothing in section 1395y(b) addresses the coordination of benefits with a Medicare Advantage Organization. A Medicare Advantage Organization instead is paid “in accordance with” section 1395w-22(a)(4).
The majority also observes that Huma-na’s position “appears to comport with CMS regulations, which provide that an MAO ‘will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter,’” Majority Op. at 1236 (quoting 42 C.F.R. § 422.108(f)), but the majority fails to explain how it does so. Humana sued under section 1395y(b)(8)(A), which creates “a private cause of action.” The Secretary cannot avail herself of a private cause of action in her official capacity. She instead must sue under the official cause of action in section 1395y(b)(2)(B)(iii). But section 1395y(b)(2)(B)(iii) does not allow Humana, a private party, to sue. The regulation cited by the majority does not interpret section 1395y(b)(3)(A), and it certainly cannot rewrite the clear text of that section.
Finally, the majority is incorrect that “an MAO must make a secondary payment any time the Secretary would do so.” Majority Op. at 1238. With certain exceptions, section 1395w-22 requires a Medicare Advantage Organization to provide the same benefits to enrollees that the Secretary would provide under Parts A and B. See 42 U.S.C. § 1395w-22(a)(l)(A); id. § 1395w-22(a)(2)(A). But a Medicare Advantage Organization remains free to be the primary payer under section 1395w-22. And even if the majority were correct that section 1395w-22 required a Medicare Advantage Organization to be a secondary payer, those payments would still be in accordance with section 1395w-22, not sections 1395y(b)(1) and 1395y(b)(2)(A).
*1243 I would conclude that the text of the statute is clear and that Humana failed to state a claim. The plain meaning of the statute moots the other issues in this appeal, and I express no view on them. Because a Medicare Advantage Organization is not the Secretary and its treasury is not the Trust Funds, I respectfully dissent.